*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VAUGHN, Minor.

UNPUBLISHED
October 27, 2022

No. 360949
Kent Circuit Court
LC No. 22-000657-GM

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

As a matter of constitutional imperative, parents have a nearly ironclad right to raise their children as they see fit. *In re Guardianship of Versalle*, 334 Mich App 173, 177; 963 NW2d 701 (2020). This minor-guardianship proceeding puts that bedrock principle to the test. The trial court appointed Petitioner as the guardian of her younger sister, REV. Petitioner and REV are children of Respondent, so the trial court's ruling had the effect of removing REV from her mother's care and placing her in the care of her older sister. In court, REV stated that she preferred to live with Petitioner, rather than Respondent. The trial court honored REV's preference, placing REV in a guardianship with her sister. Along the way, however, Respondent objected to the proceedings, contending that the trial court lacked the authority to grant Petitioner's request for a guardianship. The trial court rejected the challenge, but we conclude that the trial court had no statutory basis to grant Petitioner's request for a guardianship. Thus, we must vacate the trial court's guardianship appointment and remand the case to the trial court to enter an order dismissing the guardianship proceeding.

## I. FACTUAL BACKGROUND

The events that gave rise to this dispute began on January 7, 2022, when law-enforcement authorities became involved because REV called 911 to report that her mother was intoxicated. In response, an ambulance was dispatched to take Respondent to the hospital and a law-enforcement officer called Petitioner, who drove from Grand Rapids to pick up REV at Respondent's residence in Clarkston. But the record establishes that Respondent neither asked Petitioner to take REV nor consented to transfer REV from Respondent's care to Petitioner's care. Even though Respondent was released from the hospital in relatively short order, REV went with Petitioner to her residence in Grand Rapids.

From that point forward, REV lived with Petitioner in Grand Rapids. On January 25, 2022, Petitioner filed papers in Grand Rapids requesting temporary guardianship and a full guardianship of REV. Petitioner alleged that, because of Respondent's drinking and her inability to consistently engage in treatment, Respondent neglected REV and did not provide REV with the emotional and physical support she needed. Petitioner stated that while REV was in Respondent's care, REV had to cook and care for herself, deal with Respondent's substance abuse and mental-health problems, and endure respondent's verbal abrasiveness. The petition further alleged that, because of the toxic environment at Respondent's home, REV had become scholastically unmotivated, anxious, and depressed, so REV had begun experimenting with drugs and alcohol. Petitioner concluded that it would be in the best interests of Respondent and REV for REV to stay out of Respondent's home. Indeed, Petitioner asserted that REV had made major improvements over the three weeks that she had been out of Respondent's home. Based on those allegations, the trial court granted Petitioner's request for a temporary guardianship, ordered an investigation of the proposed guardianship, and scheduled a hearing on Petitioner's request for full guardianship.

Petitioner appeared on her own behalf at a hearing on March 18, 2022, on her petition for appointment as REV's full guardian. Respondent appeared with an attorney. The trial court began the hearing by inviting Respondent, Petitioner, and REV to offer their thoughts on the petition for guardianship. Respondent stated that she opposed a guardianship because REV was her daughter, because Respondent considered herself a responsible parent "totally capable of raising" REV, and because REV needed to come home. Respondent conceded that she had had issues with alcohol and she had not had a recent alcohol assessment, but she explained that she attended Alcoholics Anonymous meetings five days a week. Petitioner replied to the trial court's questions by referring to letters of recommendation and reports that she had submitted to the trial court to establish the need for a guardianship and her suitability as REV's full guardian. When asked by Respondent's attorney whether Respondent had permitted her to take REV, Petitioner replied:

> No. It was granted by the Court. And the deputy that was on the scene the incident of January 7th, she had blown a .258 and it was—she was taken off into an ambulance. Somehow, she was released from the emergency room. The deputy is unsure of why that happened, so he did take the additional effort to go back to the home and wait for me to drive from Grand Rapids to grab [REV] because he did not feel safe with [REV], a minor, being in the home—

Respondent testified that she had never consented to REV living with Petitioner and had always wanted REV to be returned to her. She painted a portrait of REV as an incorrigible teenager who, when she did not like Respondent's discipline, sought answers from someone else.

In closing, Respondent's counsel argued that the statutory grounds for a guardianship had not been met because Respondent never intended for REV to reside permanently with Petitioner. Counsel conceded that Respondent had made mistakes, but he argued that "the Constitution allows parents the care and custody and control of their children, even if they aren't making the greatest decisions for them." Counsel also insisted that Respondent was doing what needed to be done to regain her sobriety, that she provided REV with a comfortable home and all the necessities of life, and that REV had to be returned to her care.

The trial court issued its ruling from the bench at the conclusion of the hearing, finding that Respondent was not "a credible witness," determining that the trial court had jurisdiction because Respondent had given permission for REV to stay with Petitioner but had not provided Petitioner with the legal authority necessary for her to care for REV, and concluding that it clearly was in the best interests of REV to stay with Petitioner. The trial court encouraged Petitioner and Respondent to agree upon a visitation schedule that included Facetime, telephone calls, and in-person visits to facilitate Respondent's parent-child relationship with REV. In accordance with that decision, the trial court issued an order and letters of appointment making Petitioner the full guardian of REV. Respondent then filed this appeal.

## II. LEGAL ANALYSIS

Respondent contends that the trial court erred by appointing Petitioner as REV's guardian under MCL 700.5204(2)(b) of the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, because Respondent and Petitioner both testified at the guardianship hearing that Respondent did not give permission for REV to reside with Petitioner. The trial court found that Respondent "gave permission for REV to be" with Petitioner. " 'A circuit court's factual findings are reviewed for clear error, which occurs when this Court is left with a firm and definite conviction that a mistake was made.' " *In re Guardianship of Versalle*, 334 Mich App at 185. To the extent that we must apply MCL 700.5204(2)(b) as part of our analysis, the trial court's interpretation and application of statutes and court rules are reviewed de novo. See *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). With these standards in mind, we must turn to Respondent's contention that the trial court had no basis to appoint a guardian for REV.

Petitioner sought a guardianship under MCL 700.5204, which provides in relevant part:

> (1) A person interested in the welfare of a minor, or a minor if 14 years of age or older, may petition for the appointment of a guardian for the minor. The court may order the family independence agency or a court employee or agent to conduct an investigation of the proposed guardianship and file a written report of the investigation.

> (2) The court may appoint a guardian for an unmarried minor if any of the following circumstances exist:

> \* \* \*

> (b) The parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed.

Under MCL 700.5204(2)(b), for a trial court "to consider appointing an individual as a guardian, that individual must establish that (1) the parent permits the child[ ] to reside with another person, (2) the parent does not provide that other person with legal authority for the child[ ]'s care, and (3) the child[ ] do[es] not reside with the parent when the petition is filed." *In re Guardianship of Versalle*, 334 Mich App at 181. "Without meeting all three of the requirements, the court cannot grant the guardianship." *Id.* at 185. Respondent has chosen to contest the trial court's appointment

of a guardian for REV by focusing on the first of the three requirements, so we must decide whether the trial court correctly found that Respondent permits REV to reside with Petitioner. *Id.* at 181.

"[W]e have recognized that a lower court may appoint a guardian 'if parents permit their child to permanently reside with someone else when the guardianship issue arises . . . .' " *Id.* Here, the trial court found that Respondent "gave permission for [REV] to be" with Petitioner, but the record is bereft of evidence to support that finding of fact. The uncontradicted evidence indicates that Respondent never gave her permission for REV to reside permanently with Petitioner. Neither Respondent nor Petitioner testified at the guardianship hearing that Respondent permitted REV to reside permanently with Petitioner on January 7, 2022, or at any time thereafter. In fact, Petitioner made clear that Respondent did not give permission for REV to reside with her. Petitioner testified that, on January 7, 2022, a law-enforcement officer called her to pick up REV from Respondent's residence because Respondent was intoxicated. But when Petitioner was asked at the guardianship hearing whether Respondent had given permission to take REV, Petitioner forthrightly responded: "No. It was granted by the court." And when Respondent was asked at the guardianship hearing whether she permits REV to live with Petitioner, Respondent answered: "I do not." Accordingly, because the only two witnesses who testified on the subject of permission agreed that Respondent did not assent to REV living with Petitioner, we necessarily conclude that the trial court committed clear error by rendering a contrary finding on the subject of Respondent's permission. Given that the first of the three requirements for appointment of a guardian was not met, the trial court lacked authority to appoint Petitioner as the guardian for REV.[1] *In re Guardianship of Versalle*, 334 Mich App at 185. Consequently, we must vacate the trial court's guardianship appointment and remand this case to the trial court for entry of an order of dismissal.[2]

Vacated and remanded for entry of an order of dismissal. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates

---

[1] If Petitioner has concerns about Respondent's fitness to parent REV, Petitioner can pursue redress through a mechanism other than a guardianship. As Justice CAVANAGH stated in her dissent from our Supreme Court's decision to deny leave to appeal in *In re Guardianship of Versalle*, ___ Mich ___, ___; 972 NW2d 846, 857 (2022): "If a parent is alleged to be unfit but the statutory conditions for a guardianship are not established, the appropriate way to investigate if removal of the child from the parent's care is warranted is to institute a protective proceeding." That approach makes perfect sense because a protective proceeding is an adversarial process with procedural safeguards, see *id.*, whereas a guardianship proceeding is a cooperative process predicated upon permission. *Id.*; see also *In re Guardianship of Versalle*, 334 Mich App at 181.

[2] Because of our disposition of Respondent's first issue, we need not consider Respondent's other issues raised on appeal.